**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LLOYD ANDERSON WILSON, C.P.A.**<br><br>**Defendant.** | **Civil Action No.**<br>________________ |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

1. In November 2022, March 2023, and May 2023, Defendant Lloyd Anderson Wilson ("Wilson" or "Defendant"), a former controller of Vital Farms, Inc. ("Vital Farms"), engaged in unlawful insider trading.

2. Each time, Wilson purchased shares of Vital Farms the day before the company's scheduled earnings announcement based on material nonpublic information ("MNPI") that Wilson had received about the company's financial performance.

3. Twice, he sold the shares on the day of the announcement and made combined profits of $19,844.97. Wilson also made unrealized gains of $1,680 from a third instance of insider trading.

4. By engaging in this conduct, Wilson violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined, will continue to engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

5. The SEC seeks a final judgment: (a) permanently enjoining Wilson from violating the federal securities laws by engaging in the transactions, acts, practices, and courses of business alleged in this Complaint pursuant to Exchange Act Section 21(d)(1) [15 U.S.C. § 78u(d)(1)]; (b) ordering Defendant to disgorge his ill-gotten gains, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), (5), and (7) [15 U.S.C. §§ 78u(d)(3), (5) and (7)]; (c) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; (d) ordering an officer and director bar against Defendant pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. §§ 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) and 21A [15 U.S.C. §§ 78u(d) and 78u-1].

7. This Court has jurisdiction over this action pursuant to Exchange Act Sections 21(d), 21(e), 21A, and 27(a) [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

8. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

9. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Northern District of Georgia, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Wilson coming into possession of MNPI while performing his duties for Vital Farms from his home and trading while in possession of MNPI.

## DEFENDANT

10. Wilson, age 54, resides in Tucker, Georgia and is licensed as a Certified Public Accountant in Illinois and Virginia.

11. Wilson joined Vital Farms as a corporate controller on November 8, 2021, and worked for the company from his home in Tucker, Georgia. His employment with Vital Farms was terminated on March 22, 2023.

12. In 2025, Wilson was briefly employed as Principal Accounting Officer of a publicly traded Canadian company but was dismissed after less than two months when his employer discovered that he had falsely represented in his résumé, emails and job interviews that he was still employed by Vital Farms as its corporate controller as of June 2025–more than two years after he had been terminated.

## OTHER RELEVANT ENTITY

13. Vital Farms is a NASDAQ-listed company (ticker symbol "VITL"), headquartered in Austin, Texas and incorporated in Delaware, that sources, packages, markets and distributes eggs, butter and other dairy products. Its securities are registered with the Commission pursuant to Section 12(b) of the Exchange Act.

## FACTUAL ALLEGATIONS

### Vital Farms' Insider Trading Policy

14. Upon starting his employment with Vital Farms, Wilson acknowledged receiving and reviewing the company's written policy against insider trading.

15. That policy prohibited, among other things, "the buying or selling of stocks, bonds, future or other securities by [an employee or other covered person] who possesses or is otherwise aware of material nonpublic information about the securities or the issuer of the securities."

16. The policy noted that financial results and forecasts not released to the public constituted MNPI.

17. Vital Farms' insider trading policy also provided for "blackout periods" in which employees were forbidden from trading company stock regardless of whether they possessed MNPI. The blackout periods typically started a few weeks before the quarterly earnings announcements and ended several trading days afterwards.

18. The policy required employees who separated from the company during a blackout period to abstain from trading company stock until the blackout period ended.

19. Wilson regularly came into possession of MNPI about Vital Farms' financial performance through his position as controller for that company. Among other things, Wilson helped prepare the company's Forms 10-K and 10-Q, assisted in its monthly close process, and was involved in preparing reports on revenue recognition, accounts payable, and accounts receivable.

20. Each instance of insider trading by Wilson alleged below took place during a Vital Farms' blackout period.

**Insider Trading in Fourth Quarter 2022**

21. On October 27, 2022, Vital Farms' auditor emailed Wilson a draft earnings release for the company's third quarter results containing MNPI. The release was entitled, "Third Quarter Net Revenue a Record $92 million, up 42.4% versus Prior Year[;] Reaffirms Fiscal Year 2022 Outlook." It stated that gross profits for the third quarter of 2022 were $29.5 million, up from $19.8 million in third quarter 2021. Wilson received confirmation of these performance metrics on November 1, 2022 in the form of an internal report circulated in connection with the preparation of Vital Farms' Form 10-Q for the third quarter of 2022.

22. On November 2, 2022, based on this MNPI, Wilson purchased 1,500 shares of Vital Farms common stock at $13.50 per share, for a total cost of $20,250, through his personal brokerage account.

23. On November 3, 2022, Vital Farms filed a Form 10-Q quarterly report with the Commission and released its third-quarter earnings results disclosing $92 million in net revenue and gross profits of $29.5 million.

24. After the earnings announcement, the stock of Vital Farms rose 3.86 percent.

25. Shortly after the earnings announcement, Wilson sold his 1,500 shares for a profit of $1,079.46.

**Insider Trading in First Quarter 2023**

26. On March 7, 2023, in connection with his work as Vital Farms' controller, Wilson obtained via email a draft Form 10-K disclosing that Vital Farms' net revenue for 2022 had increased by 38.8 percent over the prior year.

27. Wilson also knew from an internal financial report he had received via email on February 23, 2023 that the company was forecasting a 38 percent annual increase in net sales and "phenomenal top and bottom-line growth" in 2023.

28. On March 8, 2023, based on this MNPI, Wilson bought 3,000 shares of Vital Farms common stock at $15.43 per share, for a total cost of $46,290, through his personal brokerage account.

29. On March 9, 2023, Vital Farms filed a Form 10-K annual report with the Commission and announced its 2022 earnings results. Its shares closed 4.31 percent higher for the day, corresponding to an unrealized gain of $1,680 to Wilson.

**Insider Trading in Second Quarter 2023**

30. On March 20, 2023, Wilson asked a finance manager to provide a monthly slide deck summarizing Vital Farms' current earnings performance along with an annual budget and updated forecast.

31. The manager sent the slide deck via email showing that net sales for Vital Farms were 44 percent higher than net sales for the corresponding period the prior year. The deck also showed that actual adjusted earnings exceeded the company's forecast and those of the previous year.

32. On March 22, 2023, Vital Farms terminated Wilson's employment for conduct unrelated to insider trading, providing him with a severance package and a separation agreement that prohibited him from using for any purpose confidential information from his Vital Farms job.

33. On May 3, 2023, although still subject to his separation agreement, as well as a company "blackout period" prohibiting him from trading shares of Vital Farms, Wilson, based on the MNPI, bought 10,000 shares of company stock for $12.31 to $12.38 per share for a total cost of $123,731.90.

34. On May 4, 2023, Vital Farms filed a Form 10-Q quarterly report with the Commission and announced its first-quarter 2023 results including a 54.7 percent increase in net sales over the prior year. The shares increased by 14.85% for the day to close at $14.25. Wilson sold his 10,000 shares on May 4 for a profit of $18,765.51 following the announcement.

## CLAIM FOR RELIEF
## Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

35. The Commission realleges and incorporates by reference paragraphs 1 through 34 as though fully set forth herein.

36. By virtue of the foregoing, Wilson, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, knowingly or recklessly: (i) employed devices, schemes or artifices to defraud; (ii) made material misrepresentations or omissions; and/or (iii) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon persons.

37. By virtue of the foregoing, Wilson directly or indirectly violated and, unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Find that Wilson violated the provisions of the federal securities laws as alleged herein;

II.

Permanently restrain and enjoin Wilson from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

III.

Order Wilson to disgorge all ill-gotten gains received during the period of the violative conduct, plus prejudgment interest thereon, pursuant to the Court's equitable powers and Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 778u(d)(5) and 78u(d)(7)];

IV.

Order Wilson to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

V.

Order that Wilson be prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry

out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

VII.

Grant such other and further relief as this Court may deem just, equitable, and proper.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: Atlanta, Georgia
September 24, 2026

/s/ Robert K. Gordon
Robert K. Gordon
Senior Trial Counsel
Georgia Bar No. 302482
gordonr@sec.gov

M. Graham Loomis
Supervisory Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

Brian M. Basinger
Senior Counsel
Georgia Bar No. 595901
basingerb@sec.gov

United States Securities and Exchange Commission
950 E. Paces Ferry Road NE
Suite 900
Atlanta, GA 30326
404-842-7600